IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FREEBIRD COMMUNICATIONS, INC.
PROFIT SHARING PLAN, et al.,

    Plaintiffs,

v.

MATTHEW ROBERTS, et al.,

    Defendants.

Case No. 2:18-cv-02026-HLT

## MEMORANDUM AND ORDER

Plaintiffs Freebird Communications, Inc. Profit Sharing Plan ("Plan"), Freebird Communications, Inc. ("Freebird"), and Michael Scarcello filed this lawsuit alleging misappropriation of trade secrets, breach of fiduciary duty, tortious interference, unjust enrichment, and related claims. Doc. 62. The crux of Plaintiffs' allegations is that Matthew Roberts—a former officer and director of Freebird and trustee of the Plan—misappropriated trade secrets and breached his fiduciary duties by luring employees away to a new business venture and interfering with Freebird's existing and prospective business relationships. *Id.* Defendants Boxer Media Group, LLC (DE), Boxer Media Group, LLC (AZ),[1] and Brian Roberts[2] move for summary judgment on all counts asserted against them. Doc. 63. For the following reasons, the Court finds

---

[1] Boxer Media Group, LLC (DE) and Boxer Media Group, LLC (AZ) are collectively referred to herein as "Boxer Media."

[2] Although there are two additional defendants to this action who are not parties to the pending motion, for purposes of this Memorandum and Order the Court collectively refers to the three moving defendants as "Defendants." On May 2, 2018, the other two defendants—Matthew Roberts and Shelley Garza-Roberts—filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Kansas, Case No. 18-20906. Doc. 15. All proceedings in this matter against Matthew Roberts and Shelley Garza-Roberts are therefore stayed by operation of the automatic stay provision of the Bankruptcy Code. Doc. 16.

that Defendants are entitled to summary judgment on Plaintiffs' claims against them and, accordingly, grants Defendants' motion.

## I. BACKGROUND[3]

### A. Compliance with Federal and Local Rules

As an initial matter, and before reciting the uncontroverted facts, the Court addresses several overarching procedural and substantive deficiencies in Plaintiffs' response. First, Plaintiffs' response fails to controvert many of Defendants' asserted facts in the manner required by the applicable rules. As required by District of Kansas Rule 56.1, Defendants set forth a statement of uncontroverted facts, separately numbered and referring with particularity to the portions of the record upon which each statement relies. D. KAN. R. 56.1(a). All facts set forth in such a statement are deemed admitted for purposes of summary judgment "unless specifically controverted by the statement of the opposing party." *Id.* And, in controverting the asserted facts, Rule 56.1 dictates that the opposing party "<u>refer with particularity to those portions of the record upon which the opposing party relies.</u>" *Id.* at 56.1(b)(1) (emphasis added).

Here, although Plaintiffs' response purports to dispute, in whole or in part, many of Defendants' asserted facts, Plaintiffs often fail to controvert those facts with citations to the record. Many of Plaintiffs' attempts to controvert Defendants' facts simply state their reasons for disagreeing with those facts without citing any supporting evidence. But it is not the Court's responsibility to scour the record on Plaintiffs' behalf to seek evidence contradicting Defendants' asserted facts. *See, e.g.*, *Oakview Treatment Ctrs. of Kan., Inc. v. Garrett*, 53 F. Supp. 2d 1184,

---

[3] In reciting the facts relevant to Defendants' motion for summary judgment, the Court construes those facts in the light most favorable to Plaintiffs as the non-moving party.

1193 n.8 (D. Kan. 1999); *Carter v. Spirit AeroSystems, Inc.*, 2019 WL 3732684, at *1 (D. Kan. 2019).

The rules related to summary judgment are straightforward and clear, and they provide the only permissible means of disputing the moving party's facts. Plaintiffs chose not to employ those means. Given Plaintiffs' failure to adhere to the applicable summary judgment rules, where allegedly disputed facts are not directly controverted by evidence contained in the record, the Court considers those facts uncontroverted for purposes of summary judgment. But the Court will deem Defendants' facts controverted to the extent Plaintiffs' statements of additional fact fairly meet the substance of Defendants' statement of facts (and can be ascertained as such) and are supported by competent evidence.

Finally, having addressed the procedural flaws, the Court addresses the overarching substantive deficiencies in Plaintiffs' response. District of Kansas Rule 7.6 requires that all briefs and memoranda filed with the Court include an argument "refer[ring] to all statutes, rules, and authorities relied upon." D. KAN. R. 7.6(a)(4). But, remarkably, in their response, Plaintiffs: (1) cite zero cases; (2) barely note, in a passing reference, one rule from the Federal Rules of Civil Procedure (Rule 56); and (3) offer no analysis of how that rule applies to the facts in this case. The Court will not spend its limited time and resources acting as Plaintiffs' attorney (or counsel's associate) to find law to support their underdeveloped claims.

### B. Freebird's Business

Having addressed these preliminary issues, the Court turns to its recitation of the factual record. At its core, this case involves a business relationship gone sour. In July 2001, Matthew Roberts and Michael Scarcello formed Freebird Communications, Inc. ("Freebird"), which was in the business of providing satellite uplink services. Doc. 62 at 3 ¶¶ 4, 13. Satellite uplink involves

taking audio and video from a remote location and using a variety of equipment to transmit that data via satellite to a customer. Doc. 64 at 3 ¶ 11. The customer then broadcasts the audio and video to the general public. *Id.* Freebird provided these services to a variety of customers at breaking news, sporting, and corporate events. *Id.* at 4 ¶ 12.

Throughout his employment at Freebird, Matthew Roberts was primarily responsible for the company's business operations, serving as Freebird's president from the company's formation until his eventual departure. Doc. 62 at 3 ¶ 5; Doc. 64 at 3 ¶ 8. Michael Scarcello, meanwhile, was Freebird's vice president, and primarily focused on the "technical" side of the business, operating and maintaining the satellite uplink trucks. Doc. 64 at 2 ¶ 5; Doc. 67 at 17 ¶ 103. Both Matthew Roberts and Scarcello also served as directors of Freebird. Doc. 62 at 3 ¶¶ 5-6.

In connection with the formation of Freebird, the Freebird Communications, Inc. Profit-Sharing Plan ("Plan") was also created to own Freebird's stock. *Id.* at 3 ¶¶ 7-8. The Plan was funded with rollover contributions from the previous retirement plans owned by Scarcello and Matthew Roberts. *Id.* at 3 ¶ 12. Matthew Roberts and Scarcello were the initial trustees of the Plan. *Id.* at 3 ¶ 9.

### C. Formation of Boxer Media

Although the parties disagree regarding the timing of the conversations, the parties agree that, at some point, Matthew Roberts and Scarcello began to discuss Scarcello's eventual retirement. Doc. 64 at 8 ¶ 32; Doc. 67 at 6 ¶ 32. And, again, though the parties disagree on the details, the parties' briefing and submissions make clear that, at some point, Matthew Roberts expressed an interest in buying out Scarcello's interest in Freebird, but those discussions were ultimately unsuccessful. Doc. 64 at 8 ¶¶ 33-34; Doc. 67 at 19 ¶ 109 (asserting that Matthew Roberts "tried" to purchase Scarcello's interest). In spring of 2016, Matthew Roberts began discussing

forming a new satellite uplink business with his brother, Brian Roberts. Doc. 64 at 8 ¶ 35; Doc. 67 at 8 ¶ 35. Boxer Media was subsequently formed in April 2016. Doc. 64 at 9 ¶ 36. Brian Roberts and his wife own Boxer Media. Doc. 62 at 4 ¶ 18. Boxer Media provides the same services for its customers as Freebird. Doc. 64 at 4 ¶ 13.

On June 10, 2016, Matthew Roberts notified Scarcello that he was resigning from Freebird. Doc. 64-10 at 2. His resignation was effective June 30, 2016. Doc. 64 at 11 ¶ 50. In the interim— i.e., after he had tendered notice of his resignation but before the resignation took effect—Matthew Roberts set up an email account for Boxer Media, which included email, document storage, and a new calendar for Boxer Media events. *Id.* at 10 ¶ 45. The day after Matthew Roberts's resignation became effective, on July 1, 2016 at 12:44 a.m., Brian Roberts offered him a position as "president and general manager" of Boxer Media. Doc. 67-4 at 2. Matthew Roberts accepted that offer. *Id.*

Following Matthew Roberts's departure from Freebird, three other Freebird employees— Pam Watson, Mike Jones, and Scott Currie—also left the company to join Boxer Media. Doc. 62 at 4 ¶¶ 19-24. Likewise, some former customers of Freebird are now customers of Boxer Media. Doc. 64 at 4 ¶ 13. Freebird employees are at-will and have never been subject to any restrictive covenants, including non-compete and non-solicitation agreements. *Id.* at 7 ¶ 31.

Matthew Roberts's positions as president and director of Freebird ended with his resignation on June 30, 2016. Doc. 62 at 3 ¶ 5. And his position as a trustee of the Plan was terminated on July 19, 2016. Doc. 64 at 16 ¶ 69. After Matthew Roberts's resignation, Scarcello assumed the duties of president, secretary, and treasurer of Freebird. Doc. 62 at 4 ¶ 14. The current trustees of the Plan are Scarcello and his son, Brian Scarcello. *Id.* at 4 ¶ 15.

5

**D. Dispute**

Freebird ultimately ceased operations in late 2017. *Id.* at 3 ¶ 13; Doc. 64 at 16 ¶ 70. Shortly thereafter, on January 17, 2018, Plaintiffs filed this lawsuit. Doc. 1. Plaintiffs assert eight separate claims in this action.[4] Doc. 62. Plaintiffs name Boxer Media as a defendant to five of those claims: Count I for misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); Count II for misappropriation of trade secrets in violation of the Kansas Uniform Trade Secrets Act, K.S.A. §§ 60-3320, et seq. ("KUTSA"); Count VI for tortious interference with contracts and business expectancies; Count VII for aiding and abetting Matthew Roberts's alleged breach of fiduciary duty, tortious interference, conversion, and misappropriation; and Count VIII for unjust enrichment. *Id.* Brian Roberts is named as a defendant with respect to only one: Count VII for aiding and abetting (to which Boxer Media, as discussed, is also a defendant).[5] *Id.* Defendants now move for summary judgment on all counts asserted against them. Doc. 63.

**II.  STANDARD**

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material

---

[4]   Two additional claims—Count IX (declaratory judgment against Matthew Roberts) and Count X (injunctive relief against Matthew Roberts and Boxer Media)—were included in the complaint but not the pretrial order, which supersedes all pleadings. *See* FED. R. CIV. P. 16(d); D. KAN. R. 16.2(b). The Court thus finds Plaintiffs abandoned Counts IX and X.

[5]   The three other claims in this action—Counts III, IV, and V (all for breach of fiduciary duty)—are directed solely against Matthew Roberts, who is not a party to the pending motion, and, accordingly, those claims are omitted from the Court's analysis. *See supra* note 2.

fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. ANALYSIS

As discussed above, Defendants seek summary judgment on each of the claims asserted against them. Doc. 63. The Court addresses the parties' arguments with respect to each of those claims as follows.

### A. Counts I and II (Violation of the DTSA and KUTSA)

In Counts I and II, Plaintiffs assert claims against Boxer Media[6] for misappropriation of Freebird's trade secrets in violation of the federal DTSA and its state-law counterpart, the KUTSA. Doc. 62 at 12. Plaintiffs allege Matthew Roberts took Freebird's trade secrets—specifically, its "customer contact information, calendars, and methods of operation for particular customers"— and used those alleged trade secrets for the benefit of Boxer Media. *Id.* Both the DTSA and the KUTSA provide a private cause of action for misappropriation of a trade secret. *See* 18 U.S.C. § 1836(b)(1); K.S.A. § 60-3321. Because the elements required to establish a claim for misappropriation are essentially the same under both the DTSA and the KUTSA (*see API Ams. Inc. v. Miller*, 380 F. Supp. 3d 1141, 1147-48 (D. Kan. 2019)), the Court analyzes these claims together.

---

[6] Plaintiffs also name Matthew Roberts as a defendant to this claim—as well as to Counts VI and VIII, discussed below—but, as discussed in note 2, *supra*, this litigation is stayed as to Matthew Roberts and, therefore, the Court omits him from its analysis.

To establish a claim for misappropriation under either the DTSA or the KUTSA, a plaintiff must show: (1) the existence of a trade secret;[7] (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means. *Miller*, 380 F. Supp. 3d at 1148. For purposes of the first element, the DTSA defines "trade secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as (1) the owner of the trade secret has taken "reasonable measures to keep such information secret" and (2) such information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by," another person. 18 U.S.C. § 1839(3). The KUTSA's definition of "trade secret" closely mirrors that of the DTSA. *See* K.S.A. § 60-3320(4).

For the following reasons, the Court finds that Plaintiffs have not produced any evidence showing the existence of any protectable "trade secrets," and, accordingly, grants Boxer Media's request for summary judgment on Counts I and II. Plaintiffs identify the "trade secrets" that were allegedly misappropriated as: (1) the so-called "Freebird Way" (i.e., information about how Freebird operates); (2) customer information, such as mobile and office phone numbers and email addresses, and information concerning each customer's requirements for satellite uplink operations; and (3) Freebird's calendar of customer events. Doc. 64-20 at 21-24. But Plaintiffs admit they cannot identify the specific names, contact information, or even the number of names and associated contact information on the customer list that was allegedly misappropriated.

---

[7] Under the DTSA, a trade secret must also "relate[] to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see also Miller*, 380 F. Supp. 3d at 1148 n.4.

Doc. 64 at 17 ¶ 73. Nor do Plaintiffs identify the specific Freebird calendar that was allegedly misappropriated.

And, regardless, Plaintiffs have not produced any evidence showing that Freebird took any "reasonable measures" to maintain the information's secrecy. Plaintiffs ostensibly argue they took steps to keep the information secret by storing the information on password-protected computers, phones, and other devices, which Plaintiffs claim were "locked in the home offices of [Matthew] Roberts and Freebird's office manager Pam Watson." Doc. 62 at 12. But Plaintiffs have no evidence to support their allegation that the information was stored in this manner. Doc. 64 at 20 ¶ 88. And the parties further agree that Freebird did not have any policies regarding the protection of the alleged trade secrets, such as policies restricting the use of personal phones or computers for business, policies requiring that computers containing such information be password-protected, or policies restricting employee access to the company's calendar or customer contact information. *Id.* at 6-7 ¶¶ 24, 27-28. Indeed, Freebird's calendar—including all of the customer information on the calendar—was accessible to <u>all</u> Freebird employees on their computers and mobile phones from 2001 through at least June 30, 2016, the effective date of Matthew Roberts's resignation. *Id.* at 6 ¶ 22. Nor did Freebird have any non-compete or non-solicitation agreements with its employees. *Id.* at 7 ¶ 31.

In response to the summary judgment motion, Plaintiffs cite no authority to rebut Boxer Media's arguments that they have failed to establish any protectable "trade secrets." In fact, as discussed in Part I.A, *supra*, Plaintiffs' response cites <u>no cases</u> at all. Indeed, the only reference to any legal authority is a passing reference to Rule 56. And though Plaintiffs argue that the bankruptcy stay with respect to Matthew Roberts and his wife, Shelley Garza-Roberts, has frustrated Plaintiffs' discovery efforts in this case, precluding them from obtaining the evidence

they need, Plaintiffs have requested no relief for any such discovery issues. As Defendants note in their reply (Doc. 68 at 32), Plaintiffs neither filed a motion to compel nor sought Matthew Roberts's personal deposition. Discovery in this case closed over five months ago, and, accordingly, the time for discovery complaints has long since passed. Plaintiffs argue in their summary judgment response that they are entitled to a jury and the jury will "sort" the issues out. But this is not relief the Court can grant on the instant record. For all of these reasons, the Court grants summary judgment in favor of Boxer Media on Plaintiffs' misappropriation claims.

### B. Count VI (Tortious Interference with Contracts and Business Expectancies)

The Court next addresses Plaintiffs' Count VI, which asserts a claim against Boxer Media[8] for tortious interference with existing contracts and business expectancies. Kansas has long recognized that a party who, without justification, induces or otherwise intentionally causes a third party to breach a contract with another may be liable for tortious interference with that contract. *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986); *see also Brown Mackie Coll. v. Graham*, 768 F. Supp. 1457, 1460 (D. Kan. 1991). And a party may similarly be held liable for tortious interference with a prospective business relationship or expectancy. *Turner*, 722 P.2d at 1115. In this case, Plaintiffs assert tortious interference both with Freebird's existing contracts and its prospective "business expectancies." Doc. 62 at 12-13.

To establish a claim for tortious interference with an existing contract, the plaintiff must show: (1) the existence of a contract; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *Cohen v. Battaglia*, 293 P.3d 752, 755 (Kan. 2013). The elements of a claim for tortious interference with a prospective business relationship are essentially identical, except

---

8   *See supra* note 6.

that claim requires, as an additional element, proof of causation. *Brown Mackie*, 768 F. Supp. at 1460. Thus, to establish a claim for tortious interference with a prospective business relationship or expectancy, the plaintiff must show: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of that relationship or expectancy by the defendant; (3) a reasonable certainty that, except for the conduct of the defendant, the plaintiff would have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages to the plaintiff as a direct or proximate result of the defendant's misconduct. *Cohen*, 293 P.3d at 755.

Here, Boxer Media argues it is entitled to summary judgment on this claim because Plaintiffs fail to establish the essential elements of their prima facie case. For the following reasons, the Court agrees. Turning first to Plaintiffs' claim for tortious interference with an existing contract, the Court finds that Plaintiffs fail to present evidence sufficient to establish the first element—the existence of a contract. In their discovery responses, the only Freebird "contract" that Plaintiffs specifically identify pertains to the Mecum Auto Auction, for which Boxer Media provided satellite uplink services in early July 2016. Doc. 64-20 at 31-34. Plaintiffs state: "[I]n early July 2016 . . . Meechum [sic] held an auto auction in Denver, Colorado, that was scheduled months in advance. [Matthew] Roberts did not put that auto auction on Freebird's calendar . . . Boxer then provided satellite uplink services for that event when it occurred, even though Boxer was a brand-new firm that had never provided a satellite uplink before that day." *Id.* at 33. But Plaintiffs have not come forth with any evidence regarding when the Mecum Auto Auction was scheduled with Boxer Media. Doc. 64 at 19 ¶ 85. Plaintiffs likewise have not presented any evidence plausibly suggesting that the Mecum Auto Auction was ever booked or scheduled on Freebird's calendar of events. *Id.* at 19 ¶ 86. And, aside from the Mecum event, Plaintiffs offer

only vague references to other "events" and "similar contracts," failing to identify any other specific contracts between Freebird and its customers with which Boxer Media allegedly interfered.

Because Plaintiff has failed to plausibly establish the existence of any contract between Freebird and its customers, Boxer Media is entitled to summary judgment on Plaintiffs' claim for tortious interference with existing contracts. And, to the extent Plaintiffs premise their interference claim on their allegation that Matthew Roberts "hired away" three Freebird employees to Boxer Media (Doc. 62 at 12), the parties agree that Freebird employees (including, during his time with the company, Matthew Roberts) are at-will and have never been subject to any restrictive covenants, including non-compete and non-solicitation agreements. Doc. 64 at 7 ¶ 31.

Plaintiffs' claim for interference with Freebird's prospective business relationships likewise fails. Plaintiffs premise their prospective claim on the same contracts and business relationships as their existing contract claim. *See* Doc. 64-20 at 35. Again, therefore, because Plaintiffs have presented no evidence plausibly establishing the first element—i.e., the existence of a business relationship or expectancy—this claim necessarily fails. And, again, Plaintiffs offer zero citations to case law or secondary sources to support their arguments against summary judgment. Only once do they even cite the Federal Rules of Civil Procedure. For all of these reasons, the Court finds that Boxer Media is entitled to summary judgment on Plaintiffs' tortious interference claim.

### C. Count VII (Aiding and Abetting)

Plaintiffs assert Count VII against both Boxer Media and Brian Roberts, alleging Defendants aided and abetted Matthew Roberts in breaching his fiduciary duties to Freebird and to the Plan, interfering with Freebird's contracts and business expectancies, converting Freebird's

"assets," and misappropriating Freebird's trade secrets. Doc. 62 at 12. Plaintiffs therefore technically assert four separate theories of aiding and abetting: (1) aiding and abetting breach of fiduciary duty, (2) aiding and abetting tortious interference, (3) aiding and abetting conversion, and (4) aiding and abetting misappropriation of trade secrets.

Aiding and abetting "is a theory used to impose vicarious liability for concerted action." *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1231 (Kan. 1991). In order to impose liability for aiding and abetting, the following elements must be established: "(1) [t]he party whom the defendant aids must perform a wrongful act causing injury; (2) at the time the defendant provides assistance, he or she must be generally aware of his or her role in part of an overall tortious or illegal activity; and (3) the defendant must knowingly and substantially assist in the principal violation. *York v. InTrust Bank, N.A.*, 962 P.2d 405, 424 (Kan. 1998). And in evaluating whether the defendant's assistance in the principal violation was "substantial," courts consider factors including the nature of the tortious act, the amount and kind of assistance given, whether the defendant was present at the time of the tort, the relationship between the defendant and the tortious actor, the defendant's state of mind, and the duration of the assistance the defendant provided. *Id.* at 425.

As an initial matter, Plaintiffs fail to address Defendants' arguments in favor of summary judgment on three of the four asserted theories of aiding and abetting. *See* Doc. 67 at 39-41 (addressing Defendants' summary judgment arguments with respect to aiding and abetting breach of fiduciary duty, but not with respect to aiding and abetting tortious interference, conversion, and misappropriation). Because Plaintiffs do not address Defendants' arguments with respect to their aiding and abetting tortious interference, aiding and abetting conversion, and aiding and abetting misappropriation of trade secrets claims, they have abandoned them, and summary judgment on

those claims is warranted on that basis. *See, e.g.*, *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (affirming district court's ruling that plaintiff abandoned claim by failing to address it in response to motion for summary judgment); *Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (finding plaintiffs abandoned claims by failing to "seriously address them" in their appellate brief); *Loudon v. K.C. Rehab. Hosp., Inc.*, 339 F. Supp. 3d 1231, 1242 (D. Kan. 2018).

The Court therefore turns to the parties' arguments with respect to Plaintiffs' aiding and abetting breach of fiduciary duty claim, and finds that Plaintiffs have failed to produce evidence supporting the second and third elements of their prima facie case—that Defendants were "generally aware" of their role in, and "knowingly and substantially assist[ed]" in, Matthew Roberts's alleged breach of his fiduciary duties to Freebird and the Plan. In support of their argument that Defendants were generally aware of and substantially assisted in Matthew Roberts's actions, Plaintiffs primarily contend, without any evidentiary support, that it is reasonable to infer that—because Matthew Roberts and Brian Roberts are brothers, and because Brian Roberts is a "smart attorney"—Matthew Roberts told Brian Roberts about his allegedly wrongful actions. Doc. 67 at 39-41. However, regardless of whether this argument makes logical sense, Plaintiffs have not produced any evidence showing Defendants knowingly and substantially assisted Matthew Roberts in any alleged breach of his fiduciary duties to Freebird or the Plan.

The parties do agree that Matthew Roberts traveled to Florida in May 2016, that he told Brian Roberts that he was taking the trip, and that he purchased a van for use by Boxer Media while on that trip. But there is no evidence plausibly suggesting that Brian Roberts <u>knew</u> Matthew Roberts was expensing that trip to Freebird. The evidence is simply that Matthew Roberts told Brian Roberts he was traveling to Florida on vacation. Doc. 64 at 10 ¶ 44. And Plaintiffs admit

they also have no information that Brian Roberts had reason to know that Matthew Roberts had taken Freebird's calendar or customer contact information with him when he left. *Id.* at 20 ¶ 89. Indeed, the parties agree that Brian Roberts understood Freebird to be in the process of liquidating in April 2016, around the time he formed Boxer Media. *Id.* at 9 ¶ 37. And Plaintiffs have not produced any evidence or argument regarding the amount and kind of assistance allegedly given by Defendants to Matthew Roberts, whether Defendants were present at the time of Matthew Roberts's alleged breach, Defendants' state of mind, the duration of Defendants' assistance, or even the <u>existence</u> of any fiduciary duty owed by Matthew Roberts. Simply put, Plaintiffs have not produced any evidence establishing proof of knowledge and substantial assistance by Defendants. And, again, Plaintiffs' response cites absolutely no authority to rebut Defendants' arguments in favor of summary judgment.

For all of these reasons, the Court accordingly grants summary judgment in favor of Defendants on Plaintiffs' Count VII for aiding and abetting breach of fiduciary duty, tortious interference, conversion, and misappropriation.

### D. Count VIII (Unjust Enrichment)

Finally, Count VIII asserts a claim against Boxer Media[9] for unjust enrichment. In support of this claim, Plaintiffs appear to allege, essentially, that Boxer Media was unjustly enriched, at Freebird's expense, by virtue of Matthew Roberts's alleged acts of taking Freebird's equipment, employees, customers, and purported trade secrets to "set up, fund, and begin operating" Boxer Media. Doc. 62 at 13.

Under Kansas law, a plaintiff asserting an unjust enrichment claim must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the

---

[9] *See supra* note 6.

benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996) (internal quotations omitted).

In its motion for summary judgment, Boxer Media primarily argues that Plaintiffs simply have not produced evidence sufficient to establish the requisite elements of their claim. Doc. 64 at 44-45. The Court agrees. As discussed above, Plaintiffs do not present any evidence showing that Boxer Media misappropriated any alleged "trade secrets" (*see supra* Part III.A) or interfered with any contracts between Freebird and its customers or employees (*see supra* Part III.B). And, with respect to the equipment and physical items that Plaintiffs claim were taken by Matthew Roberts for the use and benefit of Boxer Media—such as his "tower computer," laptop, and phone—Plaintiffs have not presented any evidence regarding those items, such as the value of those items, when those items were purchased, whether Freebird actually purchased those items, or even whether Matthew Roberts still uses and possesses those items. *Id.* at 18-19 ¶¶ 81-83. In the absence of such evidence, Plaintiffs have not established a prima facie case of unjust enrichment against Boxer Media. The Court accordingly finds that Boxer Media is entitled to summary judgment on Plaintiffs' claim for unjust enrichment.

## IV. CONCLUSION

Plaintiffs have not produced any evidence establishing their claims against Boxer Media and Brian Roberts, nor do Plaintiffs provide a single citation to any legal authority (aside from Rule 56) to support their arguments. And, not only is Plaintiffs' response devoid of substance, it is also procedurally deficient. In short, even if Plaintiffs' claims against Defendants had merit— and the Court is troubled by some of the allegations raised by Plaintiffs in this case—in the absence

of any evidence or legal authority to give weight to their allegations, the Court does not find Plaintiffs' arguments against summary judgment legally compelling or persuasive. For all of these reasons, summary judgment in favor of Defendants is warranted.

THE COURT THEREFORE ORDERS that the Motion for Summary Judgment filed by Defendants Boxer Media Group, LLC (DE), Boxer Media Group, LLC (AZ), and Brian Roberts (Doc. 63) is GRANTED.

IT IS SO ORDERED.

Dated: November 13, 2019 /s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE